# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DAVE SHELDON, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 07-2112-KHV |
| **TARA KHANAL, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM AND ORDER

Dave Sheldon and Darren Kearns bring suit against defendants including New York Community Bank ("NYCB"), the law firm of Forchelli, Curto, Schwartz, Mineo, Carlino and Cohn, LLP ("Forchelli") and James Cantanno (collectively the "NYCB Affiliates"). Under state law, plaintiffs allege in part bad faith performance of a real estate transaction (Count II); negligent and intentional abuse of process (Counts IV and V); negligent and intentional slander of title (Counts VI and VII); common law negligence (Count VIII); negligent misrepresentation (Count IX); common law conspiracy (Count XII); and tortious interference with business relationships and economic prospects (Counts XIII and XIV). This matter comes before the Court on the NYCB Affiliates' Motion To Dismiss (Doc. #137) filed April 18, 2008.[1] For reasons stated below, the Court sustains the motion.

## Legal Standards

Rule 12(b)(2), Fed. R. Civ. P., governs motions to dismiss for lack of personal jurisdiction.

---

[1] Also currently pending are motions to dismiss by the remaining defendants. These motions involve a wholly distinct set of facts and the Court will resolve them by separate order.

Plaintiffs bear the burden of establishing personal jurisdiction, and at this stage of the litigation, need only make a prima facie showing. Dudnikov v. Chalk & Vermillion Fine Arts, Inc., 514 F.3d 1063, 1069-70 (10th Cir. 2008). Plaintiffs may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendants. TH Agric. & Nutrition, LLC v. Ace European Group Ltd., 488 F.3d 1282, 1286 (10th Cir. 2007). To the extent they are uncontroverted, the Court must accept as true the well-pleaded allegations of the complaint. Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995). If the jurisdictional allegations are challenged by an appropriate pleading, plaintiffs have the duty to support jurisdictional allegations by competent proof of supporting facts. Pytlik v. Prof'l Res., Ltd., 887 F.2d 1371, 1376 (10th Cir. 1989). The Court resolves any factual disputes in plaintiffs' favor. Wenz, 55 F.3d at 1505.

## Factual Background

Viewed in the light most favorable to plaintiffs, the first amended complaint and the record evidence are summarized as follows:

This case involves a dispute regarding plaintiffs' purchase of the property at 148-18 Laburnum Avenue, Flushing, New York (the "property") in February of 2006. Sheldon is a Kansas citizen. Kearns is a Missouri citizen.

NYCB is a banking institution with its principal place of business in the State of New York. NYCB sells its stock on a public exchange and maintains a web site (www.mynycb.com) which provides services available to persons in Kansas.[2] Forchelli is a limited liability partnership

---

[2] Plaintiffs have not detailed the operation of the web site or provided evidence that NYCB has solicited business in Kansas. Currently, the web site represents that NYCB is "a New
(continued...)


organized under New York law with its principal place of business in Mineola, New York. Forchelli maintains a web site (www.fcsmcc.com) which contains information about the firm and its attorneys.[3] Cantanno – a Forchelli partner – represented NYCB in all matters pertinent to this action.

In July of 2003, Sheldon filed suit in New York to obtain a judgment ordering the sale of the property.[4] On June 7, 2005, the New York state court ordered the sheriff to sell the property at auction. The court ordered the sheriff to pay the first $10,000 in proceeds from the sale to the previous owners, and to then pay the mortgage balance to NYCB – the senior mortgagee of the property.

---

[2](...continued)
York State-chartered savings bank with 180 banking offices serving customers throughout the Metro New York/New Jersey region." http://www.mynycb.com (follow "About Us" hyperlink).

Through affidavit, Sheldon states that NYCB has "several clients in Kansas who utilize their bank." The Court is skeptical that Sheldon has personal knowledge of this fact. In any event, the record contains evidence that NYCB does not maintain branches or offices in Kansas, have employees in Kansas, have a telephone listing in Kansas or solicit business in Kansas. See Affidavit Of Karen M. Urschel, attached as Exhibit E to Memorandum In Support Of [NYCB Affiliates'] Motion To Dismiss Plaintiffs' First Amended Complaint ("Memorandum In Support") (Doc. #138) filed April 28, 2008 ¶¶ 4-5, 7-9. NYCB has never made residential or commercial loans secured by real property which is located in Kansas. Id. ¶ 6.

[3] Again, plaintiffs give no details about the website. Their allegation that the web site exists "for the sole purpose of advertising and soliciting business from residents of Kansas" implies that Forchelli (a New York law firm) caters exclusively to Kansas. In fact, Forchelli maintains only two offices, both located in New York, see http://www.fcsmcc.com/about.html, and plaintiffs point to nothing about the web site which indicates that Forchelli solicits business in Kansas, let alone that the "sole purpose" of the web site is to do so.

The record contains evidence that Forchelli does not have any offices, employees or telephone listings in Kansas. See Affidavit Of James Ricca, attached as Exhibit D to Memorandum In Support (Doc. #138) ¶¶ 5-7. It does not perform legal services in Kansas, represent any Kansas clients or advertise in Kansas. See id. ¶¶ 8-9.

[4] The Court has previously described the circumstances which spawned this litigation, see Memorandum And Order And Order To Show Cause (Doc. #78) filed November 29, 2007 at 5 n.3, and will not repeat them here.

On February 14, 2006, Cantanno – working on behalf of NYCB – called Sheldon and asked him to agree to an assignment which would obligate him to pay certain interest and fees – beyond the principal balance – associated with the NYCB mortgage. Sheldon refused. On February 15, 2006, plaintiffs purchased the property at the sheriff's sale. On February 16, 2006, Cantanno called Sheldon and again asked him to pay interest and fees which exceeded the principal balance of the NYCB mortgage. Sheldon advised Cantanno that the sheriff would pay NYCB only the outstanding principal. Cantanno made similar calls to Kearns on March 8 and April 14, 2006.

On April 24, 2006, the sheriff paid NYCB $95,054.47 from the proceeds of the sheriff's sale. This amount reflected the outstanding mortgage principal. On April 25, 2006, Kearns called Cantanno. During this conversation, Cantanno asked Kearns to sign the assignment for the payment of excess mortgage interest and fees. On April 27 and 28, 2006, Cantanno called Kearns and demanded payment of the interest and fees by May 5, 2006. Cantanno told Kearns that he would initiate a foreclosure action against the property unless plaintiffs paid the requested amount. On May 8, 2006, Cantanno called Kearns and advised him that NYCB had deposited the proceeds from the sheriff's sale. Cantanno again asked plaintiffs to pay the excess mortgage interest and fees. Plaintiffs never agreed to pay the interest and fees, and they have not paid them.

On October 1, 2006, in New York state court, NYCB (through Cantanno) filed suit against plaintiffs and the previous property owners requesting a second judicial sale of the property to recover interest and fees due under the mortgage which the sheriff had not distributed to them after the first judicial sale in February of 2006.[5] The NYCB Affiliates knew that NYCB had no legitimate

---

[5] The status of this litigation is unclear. Plaintiffs allege that the case "will be dismissed by early to mid January 2008." First Amended Complaint (Doc. 90) filed February 27, 2008. Given
(continued...)

claim against plaintiffs to the interest and fees.  As a result of this litigation, one title company refused to issue title insurance on the property.  Another title company issued title insurance, but, as a precondition, required plaintiffs to deposit $100,000 in escrow to cover potential liability from the pending foreclosure action.

Plaintiffs claim that the NYCB Affiliates negligently and intentionally abused the legal process by filing suit against them when they could not be held legally responsible for the outstanding interest and fees under the NYCB mortgage.  Plaintiffs further claim that the NYCB Affiliates negligently and intentionally slandered the title to the property through such action.[6]

## **Analysis**

The NYCB Affiliates argue that the Court should dismiss plaintiffs' claims under Rule 12(b)(2) for lack of personal jurisdiction.  The Court agrees.[7]

To obtain personal jurisdiction over nonresident defendants in a diversity action, plaintiffs must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.  TH Agric. & Nutrition, 488 F.3d at 1286-87.

---

[5](...continued) that plaintiffs filed their amended complaint in late February, this prediction is entirely disproved.  The NYCB Affiliates suggest that the case is ongoing, and the Court assumes that it is.

[6] Plaintiffs also assert claims against the NYCB Affiliates for bad faith, common law negligence, negligent misrepresentation, common law conspiracy and tortious interference with business relationships.  These claims appear to stem from the same conduct which forms the basis of the abuse of process and slander of title claims.

[7] Because the Court finds that it lacks personal jurisdiction over the NYCB Affiliates, it does not consider their arguments that it should abstain under Colo. River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), and dismiss the claims under Rule 12(b)(6) for failure to state a claim.

**I.     The Law Of The Forum State**

The Kansas long-arm statute, K.S.A. § 60-308(b), permits the exercise of personal jurisdiction over nonresident defendants where the cause of action arises from the commission of a tortious act within the state. Id. § 60-308(b)(1)(B). Under Kansas law, the long-arm statute is liberally construed to assert personal jurisdiction over nonresident defendants to the full extent permitted by the Constitution. Merriman v. Crompton Corp., 282 Kan. 433, 459, 146 P.3d 162, 179 (2006). Kansas law does not require any physical act in the forum state as a prerequisite to personal jurisdiction; the long-arm statute may be triggered by tortious acts outside the forum which cause tortious injury to a resident in the state. J.E.M. Corp. v. McClellan, 462 F. Supp. 1246, 1252 (D. Kan. 1978). The Kansas long-arm statute "specifically requires that . . . the commission of a tortious act must be in connection with the cause of action in question." Kluin v. Am. Suzuki Motor Corp., 274 Kan. 888, 897, 56 P.3d 829, 836 (2002).

In its previous order, the Court considered the allegations of the original complaint that the filing of the second foreclosure action in New York caused plaintiffs injury in Kansas. Although the Court expressed skepticism whether Kearns (a Missouri resident) suffered injury in Kansas, it assumed without deciding that the NYCB Affiliates' conduct fell within Section 60-308(b)(1)(B) as the commission of a tortious act within the state. Here, the allegations of the first amended complaint respecting the harm which the New York litigation caused plaintiffs have not significantly changed, and the NYCB Affiliates do not dispute that the filing of the second foreclosure action constitutes the commission of a tortious act within the state. Again, the Court assumes without deciding that for purposes of satisfying the Kansas long-arm statute, plaintiffs have sufficiently alleged the commission of a tortious act within the state.

**II.     Due Process**

For the exercise of personal jurisdiction to comport with due process, defendants must have "minimum contacts" with the forum such that having to defend a lawsuit in the state would not "offend traditional notions of fair play and substantial justice." Dudnikov, 514 F.3d at 1070 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

A.     Minimum Contacts

To satisfy due process, the Court must first determine whether defendants have minimum contacts with the forum state such that they should "reasonably anticipate beings haled into court there." AST Sports Sci., Inc. v. CLF Distribution Ltd., 514 F.3d 1054, 1057 (10th Cir. 2008) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). The due process clause permits the exercise of general jurisdiction over defendants that have "continuous and systematic general business contacts" with the forum state, Melea, Ltd. v. Jawer SA, 511 F.3d 1060, 1066 (10th Cir. 2007) (quoting Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 416 (1984)), and the exercise of specific jurisdiction over defendants that purposefully direct activities toward the forum state, if the cause of action arises out of those activities, id. (citing Burger King Corp. v. Rudsewicz, 471 U.S. 462, 472-73 (1985)).

i.     General Jurisdiction

In order for general jurisdiction to lie, a foreign corporation must have a substantial amount of contacts with the forum state. Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1533 (10th Cir. 1996). In assessing contacts, the Court considers (1) whether the corporation solicits business in the forum state through a local office or agents; (2) whether the corporation sends agents into the forum state on a regular basis to solicit business; (3) the extent to which the

corporation holds itself out as doing business in the forum state; and (4) the volume of business which the corporation conducts in the forum state. Id.

Plaintiffs argue that the Court may exercise general jurisdiction over NYCB because (1) it maintains an interactive website which persons may access from Kansas for online banking services, and (2) its stock is sold on a public stock exchange to persons in Kansas. These contacts are not sufficient to permit the exercise of general jurisdiction. The record suggests that NYCB holds itself out as doing business exclusively in the New York/New Jersey metropolitan area. It does not solicit business in Kansas through local offices or agents and does not conduct business in Kansas involving local telephone listings, employees or property. The record contains no evidence that its web site directs advertising toward Kansas. Although the web site fosters interaction between NYCB and its customers, the fact that NYCB may provide online banking services to customers with Kansas addresses does not create general jurisdiction where the record contains no evidence that those customers constitute a substantial part of its business. See Capitol Fed. Savings Bank v. E. Bank Corp., 493 F. Supp.2d 1150, 1164-65 (D. Kan. 2007) (out-of-state bank not subject to general jurisdiction where local customers make up insubstantial part of overall customer base). Further, plaintiffs cite no authority for the proposition that the sale of shares of stock through a public exchange supports the exercise of general jurisdiction, and the Court rejects that notion. See Action Mfg. Co. v. Simon Wrecking Co., 375 F. Supp.2d 411, 425-26 (E.D. Pa. 2005) (sale of stock to national public through New York Stock Exchange does not constitute continuous and systematic contact with forum state). On this record, the Court cannot find continuous and systematic contacts which would justify the exercise of general jurisdiction over NYCB.

Plaintiffs argue that the Court may exercise general jurisdiction over Forchelli and Cantanno

because (1) they maintain an interactive web site which advertises in Kansas, and (2) they own or are financially affiliated with title companies that provide services to Kansas residents. As with NYCB, these contacts do not permit the exercise of general jurisdiction. Generally, the record contains no evidence that Forchelli or Cantanno maintain a presence in Kansas. When personal jurisdiction is premised on the existence of web site, the Court evaluates the level of interactivity which the web site creates with residents of the forum state. See Soma Med. Int'l v. Standard Chartered Bank, 196 F.3d 1292, 1296 (10th Cir. 1999) (exercise of personal jurisdiction turns on level of interactivity and commercial nature of exchange of information through web site). Aside from plaintiffs' conclusory allegation that the firm web site is "interactive," the record contains no evidence of any function of the web site which would create continuous and systematic contacts with Kansas. Having reviewed the contents of the web site, the Court is convinced that it offers nothing more than information about the law firm and its attorneys. The web site allows visitors to request further information by email or telephone, but this "does not classify the website as anything more than passive advertisement which is not grounds for the exercise of personal jurisdiction." David W. Bernberg, LLC v. Snow, No. 07-261, 2007 WL 2436694, at *4 (E.D. La. Aug. 22, 2007) (quoting Mink v. AAAA Dev. LLC, 190 F.3d 333, 337 (5th Cir. 1999)) (level of interactivity practically nonexistent where law firm web site provides only contact information); see also Comer v. Comer, 295 F. Supp.2d 201, 209-10 (D. Mass. 2003) (law firm web site which simply posts information and makes no mention of forum state does not support personal jurisdictional); Resnick v. Manfredy, 52 F. Supp.2d 462, 468 (E.D. Pa. 1999) (without evidence that law firm web site offers more than general information and advertising, court cannot exercise general jurisdiction). With regard to ownership of or affiliation with title companies that do business in Kansas, plaintiffs have presented no evidence of such a connection,

let alone a connection which would give Forchelli and Cantanno continuous and systematic contacts with Kansas.[8]  On this record, the Court does not find that Forchelli and Cantanno have continuous and systematic contacts with Kansas.  The Court cannot exercise general jurisdiction over the NYCB Affiliates.

        ii.        Specific Jurisdiction

The minimum contacts necessary for specific personal jurisdiction may be established where a defendant has purposefully directed its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to defendant's contacts with the forum.  Trujillo v. Williams, 465 F.3d 1210, 1218 (10th Cir. 2006).  When specific jurisdiction is premised on the commission of a tortious act, "the forum state itself must be the focal point of the tort."  Dudnikov, 514 F.3d at 1074 n.9 (Tenth Circuit has adopted restrictive approach to question whether defendant has expressly aimed conduct at forum).

Here, plaintiffs' response does not make any clear argument as to specific jurisdiction. Plaintiffs have incorporated their briefing on the motion to amend the complaint, but the Court can discern no meaningful arguments from those documents.  Plaintiffs have also incorporated their jurisdiction arguments regarding other defendants in the case.  The jurisdictional question, however, requires the Court to "undertake a particularized inquiry" as to the extent to which each defendant has purposefully availed itself of the benefits of the forum's laws.  Far W. Capital, Inc. v. Towne, 46

---

[8]     Kearns' affidavit, which states that "Cantanno and Forchelli et al. own interests or have business affiliations with title companies that provide title policies for residents in Kansas," is conclusory and unhelpful.  The statement does not identify the title companies or detail the control which Cantanno and his law firm exercise over the companies' activities.  Even if the Court were inclined to impute to Cantanno and his law firm the contacts which unidentified title companies have with Kansas, Kearns' affidavit is insufficient to inform the record of the companies' activities.  On this record, the Court cannot find that their contacts with Kansas are continuous and systematic.

F.3d 1071, 1079 (10th Cir. 1995). For this reason, the blanket incorporation of arguments against other defendants is unhelpful and unpersuasive. After reviewing the amended complaint, the Court finds that the contacts between plaintiffs and the NYCB Affiliates are limited to telephone calls and facsimiles regarding the judicial sale of the property and the second foreclosure action which NYCB filed against plaintiffs in New York state court. The Court previously determined that these contacts with a forum *resident* do not support personal jurisdiction over the NYCB Affiliates because they do not create meaningful contact with the forum *state*. See Memorandum And Order And Order To Show Cause (Doc. #78) at 10-13. Again, the Court emphasizes that the focal point of the parties' relationship is New York – the contacts concern New York property, mortgaged by a New York company and subject to litigation in New York state court. Plaintiffs have not identified any contacts which would alter the Court's conclusion that the NYCB Affiliates did not purposefully avail themselves of the benefits of Kansas law. Therefore, for substantially the same reasons previously articulated, the Court finds that the NYCB Affiliates are not subject to specific personal jurisdiction.

In sum, the Court finds that the NCYB Affiliates lack sufficient contacts to justify the exercise of either general or specific personal jurisdiction over them.

B.      Traditional Notions Of Fair Play And Substantial Justice

Assuming that the NYCB Affiliates had minimum contacts with the forum state, the Court must also determine whether its exercise of personal jurisdiction over defendants offends "traditional notions of fair play and substantial justice." AST Sports Science, 514 F.3d at 1057 (quoting Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113 (1987)). This determination requires a case-specific inquiry into the reasonableness of the exercise of personal jurisdiction over nonresident defendants with minimum contacts to the forum state. TH Agric. & Nutrition, 488 F.3d at 1287. The

Court assesses reasonableness by weighing (1) the burden on defendants, (2) the forum state's interest in resolving the dispute, (3) plaintiffs' interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. Id. Reasonableness also turns in part on the strength of defendants' contacts with the forum state. Id. (reasonableness prong evokes sliding scale: weaker plaintiffs' showing on minimum contacts, less unreasonableness defendants need to defeat jurisdiction).

Plaintiffs argue that Kansas courts have a strong interest in protecting the rights of Kansas citizens and providing them a convenient forum to redress their injuries. As the Court noted in its previous order, these interests are weak and do not favor Kearns (a Missouri resident) at all. See Memorandum And Order To Show Cause (Doc. #78) at 14-15. In contrast, as the Court has previously explained, the first and fourth factors – defendants' burden and the interstate judicial system's interest in obtaining efficient resolution of the controversy – strongly favor defendants. See id. at 15. Plaintiffs do not suggest that the balance of these factors has changed. Therefore, for substantially the reasons stated in its previous order, the Court finds that the exercise of personal jurisdiction over the NYCB Affiliates would not comport with traditional notions of fair play and substantial justice. Accordingly, the Court dismisses for lack of personal jurisdiction, plaintiffs' claims against the NYCB Affiliates.

**IT IS THEREFORE ORDERED** that the NYCB Affiliates' Motion To Dismiss (Doc. #137) filed April 18, 2008 be and hereby is **SUSTAINED**. New York Community Bank, the law firm of Forchelli, Curto, Schwartz, Mineo, Carlino and Cohn, LLP, and James Cantanno are dismissed from the case.

Dated this 27th day of June, 2008 at Kansas City, Kansas.

                                      s/ Kathryn H. Vratil  
                                      Kathryn H. Vratil  
                                      United States District Judge